**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ELIESER LUMPUY d/b/a
3LM Motorsports,

    Plaintiff,

v.                                                      Case No. 8:11-cv-2455-T-24 MAP

SCOTTSDALE INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Reconsideration. (Doc. No. 138). Since Defendant has made the argument contained within this motion several times throughout this case, the Court denies this motion without requiring Plaintiff to file a response.

**I. Background**

Plaintiff Elieser Lumpuy owns commercial property that was insured by Defendant Scottsdale Insurance Company. The insurance policy provided $150,000 in sinkhole coverage.

Plaintiff's property suffered sinkhole damage, and Plaintiff made a claim under the insurance policy. In response, Defendant hired BCI Engineers & Scientists, Inc. ("BCI") to investigate the damage. BCI concluded that sinkhole activity caused damage to Plaintiff's property, and BCI recommended compaction and chemical grouting to mitigate the effects of the sinkhole activity.

Thereafter, Plaintiff retained his own engineer, Florida Testing and Environmental, Inc. ("FTE"), to conduct a peer review of BCI's report and recommendation. FTE concluded that fifty-one full perimeter underpins were needed in addition to compaction and chemical grouting

to mitigate the effects of the sinkhole activity.

Plaintiff wrote a letter to Defendant, in which he notified Defendant that he was entering into a contract with Champion Foundation Repair System ("Champion") to stabilize the land and building and to repair the foundation in accordance with FTE's repair recommendation. Plaintiff enclosed a copy of Champion's Installation Proposal and Work Authorization so that Defendant could approve the proposed contract and authorize work to begin.

Instead of approving Champion's proposed contract, Defendant invoked the non-binding neutral evaluation provision within the insurance policy. Thomas Miller was the neutral evaluator, and he agreed that compaction and chemical grouting were necessary. Additionally, Miller recommended that six underpins be installed to address certain masonry cracking. Miller estimated that the cost to make these repairs would total $153,550. Thereafter, Defendant informed Plaintiff that it had adopted the subsurface repair recommendation of Miller.

Plaintiff did not want to repair his property in accordance with Miller's repair recommendation. Instead, Plaintiff insisted that the appropriate method of repair was FTE's repair recommendation. Defendant has refused to pay for the subsurface repair costs, because Plaintiff has not entered into an enforceable contract to complete the subsurface repairs in accordance with the recommendations of an engineer selected or approved by Defendant and because no such repairs have begun.

In this lawsuit, Plaintiff asserted a breach of contract claim based on two things: (1) Defendant's failure to tender the policy limits, even after the neutral evaluator estimated the repair costs to exceed the $150,000 policy limit; and (2) Defendant's failure to approve Champion's proposed contract. The case went to trial, and the jury concluded that Defendant

did breach the insurance policy.

## II. Motion for Reconsideration

Throughout this case, Defendant has argued that it is entitled to prevail because Plaintiff has not entered into an enforceable contract to complete subsurface repairs in accordance with the recommendations of an engineer selected or approved by Defendant.[1]  However, the Court has consistently responded that this case presented questions of fact for the jury to decide. The insurance policy gave Defendant discretion over the selection and approval of the engineer whose subsurface repair recommendation would be followed. Because of this, the Court instructed the jury as follows:

> Where a contract vests a party with discretion, but provides no standards for exercising that discretion, Florida law requires that the party exercise that discretion in a reasonable manner. In this case, the insurance policy provides that the method to repair the foundation of Plaintiff's property be done in accordance with the recommendation of a professional engineer selected or approved by Defendant. While under the terms of the policy of insurance Defendant has the discretion to approve of the engineer selected by Plaintiff, Defendant cannot exercise that discretion in an unreasonable manner. Therefore, you must decide whether Defendant unreasonably refused to approve of Plaintiff's engineer, or whether Defendant's refusal to approve of Plaintiff's engineer was reasonable.

(Doc. No. 128, p. 11).

Defendant has argued, and continues to argue in the instant motion, that the Court improperly allowed the jury to consider whether Defendant acted reasonably. Defendant contends that an insurance company's failure to act reasonably and in good faith can only be considered after there is a finding of liability under an insurance policy. However, because the

---

[1] The proposed contract with Champion was not enforceable, because it was contingent on Defendant's approval, which Defendant refused to give.

Court allowed the jury to consider whether Defendant's actions were reasonable when determining whether Defendant breached the insurance policy, Defendant contends that this Court erred. In fact, Defendant now appears to go so far as to argue that it had the right to act unreasonably and in bad faith. (Doc. No. 138, p. 5)(stating that "[b]y adding a 'reasonable' qualifier to the jury instructions, this Honorable Court has permitted the jury to infer that the company had to act in good faith in approving or selecting the professional engineer whose stabilization recommendations the insured must follow").

Defendant's argument is largely based on QBE Insurance Corp. v. Chalfonte Condominium Association, Inc., 94 So. 3d 541 (Fla. 2012). As this Court has previously acknowledged, there is language in QBE that, at first blush, appears to support Defendant's position that whether Defendant acted reasonably is not a consideration when determining whether an insurer breached an insurance policy by denying coverage. Specifically, the QBE court stated:

> The covenant [of good faith and fair dealing] is intended to protect "the reasonable expectations of the contracting parties in light of their express agreement." However, this Court has specifically declined to adopt the doctrine of reasonable expectations in the context of insurance contracts, concluding that construing insurance policies under this doctrine "can only lead to uncertainty and unnecessary litigation."

Id. at 549 (internal citations omitted). However, in stating that the court had specifically declined to adopt the doctrine of reasonable expectations in the context of insurance contracts, the QBE court cited to its prior decision in Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Company, 711 So. 2d 1135 (Fla. 1998). In determining the meaning of a pollution exclusion clause, the Deni court stated:

4

> We decline to adopt the doctrine of reasonable expectations. There is no need for it if the policy provisions are ambiguous because in Florida ambiguities are construed against the insurer. To apply the doctrine to an unambiguous provision would be to rewrite the contract and the basis upon which the premiums are charged.

Id. at 1140.  Thus, the court in QBE and Deni was not stating that an insurer does not need to act reasonably.  Such a pronouncement would make no sense, given that bad faith claims in the insurance context are abundant.

Furthermore, the actual issue in QBE was whether "Florida law recognize[s] a claim for breach of the implied warranty of good faith and fair dealing by an insured against its insurer based on the insurer's failure to investigate and assess the insured's claim within a reasonable period of time."  QBE, 94 So. 3d at 545.  Such was not the issue before this Court.  Accordingly, QBE is not controlling.

This Court notes that Defendant's argument is based on the correct premise that a bad faith *claim* cannot be asserted until after there has been a determination regarding liability in a breach of insurance contract claim.  However, Defendant misapplies this argument to the facts of this case to create a circular outcome—a determination regarding whether Defendant breached the insurance contract (and thus, a determination regarding liability) cannot be determined without considering whether Defendant acted unreasonably.  Stated differently, if Defendant acted unreasonably by failing to approve of FTE and failing to approve of Champion's proposed contract, the jury could conclude (and did, in fact, conclude) that Defendant breached the insurance contract.

To follow Defendant's logic, Defendant would be isolated from liability for its unreasonable refusal to approve of FTE's repair recommendation and Champion's proposed

5

contract. Stated differently, if the jury could not consider whether Defendant unreasonably refused to approve of FTE's repair recommendation and Champion's proposed contract, then Plaintiff could not establish that Defendant breached the insurance policy and Defendant's unreasonable actions (as determined by the jury) would be sustained. Thus, the reasonableness of Defendant's conduct is relevant to the determination of whether Defendant breached the insurance contract by failing to approve of FTE and of Champion's proposed contract. If Defendant's conduct is not considered, then it could unreasonably withhold its approval of FTE and Champion's proposed subsurface repair contract without any consequences for its unreasonable actions.

### III. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Reconsideration (Doc. No. 138) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, this 22nd day of May, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record