UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIESER LUMPUY d/b/a
3LM Motorsports,

    Plaintiff,

v.                                               Case No. 8:11-cv-2455-T-24 MAP

SCOTTSDALE INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on three motions: (1) Defendant's Motion to Alter or Amend Judgment and Remittitur (Doc. No. 136), which Plaintiff opposes (Doc. No. 144); (2) Plaintiff's Motion for Prejudgment Interest (Doc. No. 140), which Defendant opposes (Doc. No. 146); and Defendant's Motion for a New Trial (Doc. No. 145), which Plaintiff opposes (Doc. No. 147). Accordingly, the Court will address each motion.

**I. Background**

Plaintiff Elieser Lumpuy owns commercial property that was insured by Defendant Scottsdale Insurance Company. The insurance policy provided $150,000 in sinkhole coverage.

Plaintiff's property suffered sinkhole damage, and Plaintiff made a claim under the insurance policy. In response, Defendant hired BCI Engineers & Scientists, Inc. ("BCI") to investigate the damage. BCI concluded that sinkhole activity caused damage to Plaintiff's property, and BCI recommended compaction and chemical grouting to mitigate the effects of the sinkhole activity.

Thereafter, Plaintiff retained his own engineer, Florida Testing and Environmental, Inc.

("FTE"), to conduct a peer review of BCI's report and recommendation. FTE concluded that fifty-one full perimeter underpins were needed in addition to compaction and chemical grouting to mitigate the effects of the sinkhole activity.

Plaintiff wrote a letter to Defendant, in which he notified Defendant that he was entering into a contract with Champion Foundation Repair System ("Champion") to stabilize the land and building and to repair the foundation in accordance with FTE's repair recommendation. Plaintiff enclosed a copy of Champion's Installation Proposal and Work Authorization so that Defendant could approve the proposed contract and authorize work to begin. Champion estimated that the repairs would cost between $264,025 and $273,485, with payments due as follows: 30% due up front, 30% due upon the repairs being 50% completed, 30% due when the foundation stabilization was completed, and the remaining 10% due when all of the repairs were completed.

Instead of approving Champion's proposed contract, Defendant invoked the non-binding neutral evaluation provision within the insurance policy. Thomas Miller was the neutral evaluator, and he agreed that compaction and chemical grouting were necessary. Additionally, Miller recommended that six underpins be installed to address certain masonry cracking. Miller estimated that the cost to make these repairs would total $153,550. Thereafter, Defendant informed Plaintiff that it had adopted the subsurface repair recommendation of Miller.

Plaintiff did not want to repair his property in accordance with Miller's repair recommendation. Instead, Plaintiff insisted that the appropriate method of repair was FTE's repair recommendation. Defendant refused to pay for the subsurface repair costs, because Plaintiff had not entered into an enforceable contract to complete the subsurface repairs in accordance with the recommendations of an engineer selected or approved by Defendant and

because no such repairs have begun.

In this lawsuit, Plaintiff asserted a breach of contract claim based on two things: (1) Defendant's failure to tender the policy limits, even after the neutral evaluator estimated the repair costs to exceed the $150,000 policy limit; and (2) Defendant's failure to approve Champion's proposed contract. The case went to trial, and the jury concluded that Defendant did breach the insurance policy. The jury awarded $264,025 in damages for subsurface repairs and $16,000 in damages for above-ground cosmetic damage. (Doc. No. 129).

## II. Motion to Alter or Amend the Judgment and Remittitur

In its motion to alter or amend the judgment and for remittitur, Defendant makes several arguments. First, Defendant argues that the verdict should be reduced by $16,000 because there was no estimate substantiating that amount as the actual cash value for the above-ground cosmetic damage. The Court rejects this argument, because Plaintiff's expert, George Zobrist, testified that the actual cash value for the above-ground cosmetic damage was $16,000.

Next, Defendant argues that the verdict should be reduced to the amount of the remaining policy limit, calculated as $150,000 less $4,847.38 previously paid to Plaintiff, for a remaining balance of $145,152.62. Plaintiff acknowledges that such a reduction is warranted.

Next, Defendant argues that the reduced amount of $145,152.62 should be further reduced to reflect only the 30% down payment that was due under the proposed Champion contract (calculated as 30% of the jury's subsurface damages award of $264,025), which equals $79,207.50. The Court rejects this argument. Instead, the Court concludes that the full policy balance of $145,152.62 should not be reduced further, as past and future damages are recoverable. See National Education Centers, Inc. v. Kirkland, 635 So. 2d 33, 34 (Fla. 4th DCA

1994).  As noted in Kirkland:

> Whether, in an action on a contract, the plaintiff can recover damages for nonperformance of the whole contract, and thus recover damages not sustained at the time the action is brought, depends, as a general rule, on whether there has been such a breach of the contract as the plaintiff is authorized to consider as entirely putting an end to the contract. . . . *Accordingly, where there is a total breach of a contract, all the damages, past or future,* which are reasonably certain to occur to the plaintiff may, as a general rule, be recovered in a single action. This is also generally true in the case of an anticipatory breach, as where one party . . . unequivocally refuses to perform.

Id. (quotation marks and citation omitted).

Finally, Defendant argues that any payment should include Champion as a payee. However, Defendant does not cite any legal authority to support such a request, and as such, the Court rejects this argument.

Accordingly, the Court grants Defendant's motion to the extent that the Court reduces the judgment for damages in this case to $145,152.62, which is the remaining policy balance. Otherwise, the motion is denied.

### III.  Motion for Prejudgment Interest

Plaintiff moves for an award of prejudgment interest at Florida's statutory rates on the reduced judgment of $145,152.62.  Plaintiff argues that prejudgment interest began accruing as of July 24, 2011, which is the extended deadline that Plaintiff set for Defendant to accept and approve the proposed Champion contract.

Defendant opposes the motion, arguing that prejudgement interest is not warranted, and if it is warranted at all, it should only accrue on $79,207.50—the portion of the reduced judgment equal to the 30% down payment that was due under the proposed Champion contract.  The Court rejects these arguments.

4

The Court agrees with Plaintiff that he should be awarded prejudgement interest on the reduced judgment of $145,152.62 as of July 24, 2011. As explained by one court:

> Florida has adopted the "loss theory" for awarding prejudgment interest in property damage cases. Under the loss theory, interest begins to run from the time of the wrongful deprivation; neither the merit of a defense nor the certainty of the loss's amount affects the interest award. . . . Florida law entitles such individual to prejudgment interest from the date of the loss. . . . In cases concerning the recovery of insurance proceeds for property losses, the Florida courts have equated the date of the loss with the date that "the proceeds would have been due under the policy." . . . [Thus, this inquiry] focuses on when the proceeds became due under this policy.

Columbia Casualty Co. v. Southern Flapjacks, Inc., 868 F.2d 1217, 1219 (11th Cir. 1989)(internal citations omitted). As of July 24, 2011, Plaintiff had completed his obligations under the insurance policy, and all that remained was Defendant's approval of the proposed Champion contract and the completion of the work by Champion. While the Court acknowledges that installment payments were designated in the Champion contract, and as such, not all of the money due under the Champion contact was due on July 24, 2011, there is no way for the Court to determine the exact date that the work would have been completed and the remaining installment payments would have been due. However, it is clear that had Defendant approved of the proposed Champion contract and allowed the work to begin, the work would have been completed prior to the judgment being entered in this case, nearly two years after Plaintiff submitted Champion's proposed contract to Defendant.

Accordingly, the Court calculates the accrued prejudgment interest as follows[1]:

---

[1] The prejudgment interest rates can be found at: http://www.myfloridacfo.com/Division/AA/Vendors/ and http://www.myfloridacfo.com/Division/AA/Vendors/JudgmentInterestRates.htm.

| Time Period | Amount Accruing Interest | # of Days Accruing Interest | Daily Interest Rate | Total Interest |
|---|---|---|---|---|
| July 24 - Sept. 30, 2011 | $ 145,152.62 | 69 | 0.0001644 | $ 1,646.55 |
| Oct 1 - Dec. 31, 2011 | $ 145,152.62 | 92 | 0.000130137 | $ 1,737.86 |
| Jan. 1 - Dec. 31, 2012 | $ 145,152.62 | 366 | 0.000129781 | $ 6,894.73 |
| Jan. 1 - May 9, 2013 | $ 145,152.62 | 129 | 0.000130137 | $ 2,436.77 |
| | | | TOTAL | $ 12,715.92 |

As a result, the Court grants Plaintiff's motion to the extent that the Court awards Plaintiff $12,715.92 in prejudgment interest.

**IV.  Motion for New Trial**

In its motion for a new trial, Defendant proffers three arguments: (1) Plaintiff did not have the right to select the proper subsurface repair method or to challenge Defendant's proposed subsurface repair method; (2) based on the terms of the proposed Champion contract that required a 30% down payment before repair work was started, Defendant can only be held liable for the 30% down payment; and (3) the Court improperly allowed references to good faith and reasonableness into the trial.

The Court has already extensively addressed and explained its reasons for rejecting Defendant's argument regarding references to good faith and reasonableness such that further analysis of this argument is not warranted.  Likewise, the Court has already addressed and rejected Defendant's argument regarding reducing its liability to the 30% down payment set forth in Champion's proposed contract when the Court ruled on Defendant's motion for remittitur.

The Court also rejects Defendant's new argument that Plaintiff did not have the right to

select the proper subsurface repair method or to challenge Defendant's proposed subsurface repair method. If Defendant wishes to retain absolute and sole discretion to chose the method of subsurface remediation for sinkhole damage, Defendant should clearly state so in the insurance policy. However, given that the policy contains no such language, and given that the policy provides for neutral evaluation and specifically states that the neutral evaluation is not binding on either party, the Court declines Defendant's invitation to preclude Plaintiff from challenging Defendant's unreasonable repair recommendation. As such, the Court denies Defendant's motion for a new trial.

### V.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion to Alter or Amend Judgment and Remittitur (Doc. No. 136) is **GRANTED IN PART AND DENIED IN PART**: The motion is **GRANTED** to the extent that the Court reduces the judgment in this case to $145,152.62; otherwise, the motion is **DENIED.**

(2) Plaintiff's Motion for Prejudgment Interest (Doc. No. 140) is **GRANTED** to the extent that the Court awards Plaintiff $12,715.92 in prejudgment interest.

(3) The Clerk is directed to amend the amended judgment (Doc. No. 133) to reflect a total award of $145,152.62 in damages, plus $12,715.92 in prejudgment interest.

(4) Defendant's Motion for a New Trial (Doc. No. 145) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, this 14th day of June, 2013.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record